UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANG DONG JOINT STOCK COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>J.F. HILLEBRAND USA, INC., et al.,<br><br>Defendants. | Case No. 2:18-cv-03195-KJM-KJN<br><br>ORDER |

Plaintiff Rang Dong Joint Stock Company, doing business as Rang Dong Winery, a California Corporation, sues defendants J.F. Hillebrand USA, Inc., a Delaware Corporation, and Blue Eagle Consolidation Services, a German business entity, for damage to cargo carried by sea.[1] Hillebrand moves to dismiss. As explained below, the court GRANTS in part and DENIES in part the motion.

I. BACKGROUND

On February 2, 2018, Rang Dong Winery contracted with Hillebrand to ship three containers of Rang Dong Winery's wine to Ho Chi Minh City, Vietnam. Compl., ECF No. 1, ¶ 9; *see* Compl. Ex. A (invoice number 5351801536 confirming Ho Chi Minh City as port of discharge and arrival date as March 14, 2018). Because Ho Chi Minh City was the port of discharge, plaintiff

---

[1] Although plaintiff filed this case on December 12, 2018, there is no indication Blue Eagle has been served.

alleges "the Cargo should have been delivered to Cat Lai Port[,] . . . consistent with Hillebrand's representations to Rang Dong Winery and also consistent with prior shipments Rang Dong Winery had made through Hillebrand." Compl. ¶ 10. At hearing, the parties clarified that Cat Lai is a terminal within Ho Chi Minh City Port. Rang Dong Winery alleges on information and belief that on February 20, 2018, defendants received Rang Dong Winery's cargo for carriage under bill of lading number BQEGUSS096536. *Id.* ¶ 11; *see* Compl. Ex. B (bill of lading). The bill of lading consisted of only two pages, without any terms or conditions limiting defendants' liability. Compl. ¶ 11; *see id.* Ex. B.

At an unspecified time, and without notifying Rang Dong Winery, the cargo's destination was changed to Cai Mep Port. *Id.* ¶ 12. Cai Mep is also a terminal within Ho Chi Minh City, as the parties clarified at hearing. Rang Dong Winery then contacted Hillebrand, explaining that the cargo needed to be delivered to Cat Lai Port to clear customs and would be destroyed if left too long at Cai Mep Port because of "the heat in Vietnam." *Id.* On March 22, 2018, Hillebrand agreed to move the cargo to Cat Lai Port, stating it would "move the cargo to the correct terminal Cat Lai. [Hillebrand] ha[s] received all amended docs this morning and informed [its] overseas office of the correction." *Id.* ¶ 13. The cargo then remained at Cai Mep Port for eight days before being moved to Cat Lai Port on March 30, 2018. *Id.* When the cargo arrived at Cai Lai Port, it "was extensively damaged due to the delay and geographic deviation caused by Defendants." *Id.* ¶ 14. Rang Dong Winery alleges it suffered more than $500,000 in damages. *Id.* ¶ 17.

Rang Dong Winery sued Hillebrand and Blue Eagle on December 12, 2018, alleging damages under the Carriage of Goods by Sea Act, false bill of lading, deviation and breach of fiduciary duty. Compl., ECF No. 1. Hillebrand now moves to dismiss. Mot., ECF No. 11.[2] Rang Dong Winery opposes, Opp'n, ECF No. 13,[3] and Hillebrand filed a reply, Reply, ECF No. 16.

/////

---

[2] After filing its motion to dismiss at ECF No. 9, Hillebrand refiled its motion with a notice of errata indicating "[t]he only change is the inclusion of the proper Exhibit A." ECF No. 11. The court therefore refers to ECF No. 11 as the operative motion.

[3] After filing its opposition, Rang Dong Winery filed a notice of errata attaching a corrected curriculum vitae for Thomas A. Wanckel. ECF No. 15−15-1.

## II. <u>LEGAL STANDARD</u>

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." A court may dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to survive a motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, this court must construe the complaint in the light most favorable to the plaintiff and accept as true the factual allegations of the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). This rule does not apply to "'a legal conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986) *quoted in Twombly*, 550 U.S. at 555, nor to "allegations that contradict matters properly subject to judicial notice" or to material attached to or incorporated by reference into the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988–89 (9th Cir. 2001). A court's consideration of documents attached to a complaint or incorporated by reference or matter of judicial notice will not convert a motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003); *Parks Sch. of Bus. v. Symington*, 51 F.3d

3

1480, 1484 (9th Cir. 1995); *compare Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (noting that even though court may look beyond pleadings on motion to dismiss, generally court is limited to face of the complaint on 12(b)(6) motion).

III. DISCUSSION

  A. <u>Whether Hillebrand is a Carrier under the Carriage of Goods by Sea Act</u>

    Hillebrand argues Rang Dong Winery has not alleged Hillebrand is a carrier subject to liability under the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 30701, Note § 1(a), and Rang Dong Winery's first, second and third claims should therefore be dismissed. Mot. at 10. Specifically, Hillebrand argues that Rang Dong Winery "does not allege any facts that Hillebrand acted as a carrier in this case" and the complaint's "Exhibit B . . . clearly shows that Blue Eagle issued the Bill of Lading contract and acted as the carrier" while "Hillebrand was simply an agent for Blue Eagle in issuing the Bill of Lading." *Id.* at 11. At hearing, Hillebrand argued the bill of lading is dispositive as to this issue.

    Rang Dong Winery contends it has sufficiently alleged Hillebrand is a carrier in alleging Rang Dong Winery "contracted with Hillebrand to ship the Cargo," and argues any further inquiry is inappropriate at the pleading stage. Opp'n at 7; *but see Dimond Rigging Co., LLC v. BDP Int'l, Inc.*, 914 F.3d 435, 443−46 (6th Cir. 2019) (resolving whether party was carrier under COGSA in motion to dismiss). Rang Dong Winery also argues that, in any event, COGSA defines "carrier" as "the owner, manager, charterer, agent, or master of a vessel," and thus includes Hillebrand acting as an agent here. Opp'n at 7 (emphasis omitted) (quoting 46 U.S.C. § 30701). Hillebrand responds that Rang Dong Winery mistakenly relies on the Harter Act's definition of carrier rather than the COGSA's definition. Reply at 6 (arguing "§ 30701 is the Harter Act, not COGSA. The actual definition of a carrier under COGSA is found in the Note to 46 U.S.C. § 30701 . . . ."); *see* 46 U.S.C. § 30701, Note § 1(a) (definition in note following § 30701, reading, "[t]he term 'carrier' includes the owner or the charterer who enters into a contract of carriage with a shipper").

    As to the applicable definition of "carrier" under the COGSA, the parties' divergent opinions are understandable in light of the available authority, which reflects a range of positions.

4

A Third Circuit opinion supports Hillebrand's position, though that panel did not specifically address COGSA's definition of "carrier." *See Liberty Woods Int'l, Inc. v. Motor Vessel OCEAN QUARTZ*, 889 F.3d 127 (3d Cir. 2018). There, the panel explained:

> [T]he District Court erred in interpreting COGSA by confusing it with the Harter Act, a precursor to COGSA. . . . In 2006, COGSA was relocated from 46 U.S.C. §§ 1300 *et seq.*, to a note after 46 U.S.C. § 30701.5 During this same period, the Harter Act was also moved from 46 U.S.C. §§ 190–196 to 46 U.S.C. §§ 30701–30707. As a result, COGSA was amended, not merely relocated. The relocated Harter Act provisions were the 'amended' COGSA provisions.

*Id.* at 129 (footnote omitted); *see also Starrag v. Maersk, Inc.*, 486 F.3d 607, 610 n.1 (9th Cir. 2007) ("Congress recodified both COGSA and the Harter Act on October 6, 2006 at 46 U.S.C. § 30701 historical and statutory notes.") (citing Act of October 6, 2006, Pub. L. No. 109–304, 120 Stat. 1485). Accordingly, as one commentator has explained, "COGSA has not been amended or repealed; it is still in the United States Code as a statutory note following 46 U.S.C. § 30701. And chapter 307 of title 46 (46 U.S.C. §§ 30701−30707) is the recodified version of the 1893 Harter Act, not COGSA." D. Robertson et. al., *Recent Developments in Admiralty and Maritime Law at the National Level and in the Fifth and Eleventh Circuits*, 42 Tul. Mar. L.J. 373, 417 (2018) (footnote omitted).

There is support, then, for Hillebrand's position that the Note's text alone defines "carrier" under COGSA, though authorities differ on the issue. *See Fortis Corp. Ins., SA v. Viken Ship Mgmt. AS*, 597 F.3d 784, 789−90 (6th Cir. 2010) (defining "carrier" under the COGSA using only the Note's definition and without reference to § 30701's text); *QT Trading, L.P. v. M/V SAGA MORUS*, 641 F.3d 105, 109 (5th Cir. 2011) (same); *Petroleos Mexicanos Refinacion v. M/T KING A*, 554 F.3d 99, 103 (3d Cir. 2009) (same); *but see Man Ferrostaal, Inc. v. M/V Akili*, 704 F.3d 77 (2d Cir. 2012) (relying on both § 30701 and § 1(a) of the Note following that section to define "carrier": "COGSA defines a 'carrier' to mean 'the owner, manager, charterer, agent, or master of a vessel,' . . . including 'the owner or the charterer who enters into a contract of carriage with a shipper'"); *Dimond Rigging*, 914 F.3d at 444 (defining "carrier" as "the owner, manager, charterer,

5

agent, or master of a vessel" and providing the Note definition in a parenthetical citation)[4]; *State Nat. Ins. Co. v. Mktg. Servs. Inc.*, 544 F. App'x 369, 372 (5th Cir. 2013) ("Currently, COSGA defines 'carrier' as "the owner, manager, charterer, agent, or master of a vessel" and identifying note definition as "a former version of the [COGSA]")).

Moreover, some courts have applied a "plain language" approach in determining whether a party is a carrier under COGSA, asking "whether a party satisfies the statutory definition . . . . an assessment of function, rather than form." *Dimond Rigging*, 914 F.3d at 445 (emphasis, footnotes omitted); *see also* Daniel H. Charest, A Fresh Look at the Treatment of Vessel Managers Under COGSA, 78 Tul. L. Rev. 885, 894 (2004) ("A common error, whether intentional or not, is to misquote the definition of carrier by declaring that '[a] "carrier" is defined as "the owner or the charterer who enters into a contract of carriage with a shipper."' The inclusive nature of COGSA's definition of carrier should not be read so as to be exclusive.") (footnotes omitted). Other courts have relied on a multi-factor test, looking to "(1) how the party's obligation is expressed in documents pertaining to the agreement; (2) the history of dealings between the parties; (3) whether the party issued a bill of lading; and (4) how the party charged the shipper." *See id.* at 445 n.13 (citing, inter alia, *Zima Corp. v. M.V. Roman Pazinski*, 493 F.Supp. 268, 273 (S.D.N.Y. 1980)). The Ninth Circuit has not weighed in, except in a non-precedential 1992 unpublished, and therefore non-citable, memorandum disposition in which parties had agreed the *Zima* test referenced in *Dimond Rigging* controlled. *Confeccoes Texteis de Vouzela, LDA. v. Space Tech Sys. Inc.*, 972 F.2d 1338 (9th Cir. 1992) (Table, unpublished).[5]

Nonetheless, as Hillebrand notes, nowhere in its complaint does Rang Dong Winery expressly allege Hillebrand was a "carrier." Further, Rang Dong Winery lumps the defendants together throughout the complaint, without providing concrete factual allegations that establish Hillebrand's status as a carrier. *See, e.g.*, Compl. ¶ 11 (alleging "bill of lading was "issued by

---

[4] Notably, *Dimond Riggins* relies on *Fortis* without acknowledging the discrepancy in definitions of "carrier" provided.

[5] Here, the court cites this unpublished opinion only to note its existence and without relying on it as authority.

6

and/or on behalf of said Defendants"); *but see* Compl. Ex. B (bill of lading identifying Hillebrand as "agent" and "Blue Eagle Consolidated Services GmbH as carrier"); *Dimond Rigging Co.*, 914 F.3d at 445 ("If [a party] issued a bill of lading, then it is usually a 'carrier' under COGSA"), *Zima Corp.*, 493 F. Supp. at 273 (in determining whether a party is a carrier, court should consider "issuance of a bill of lading, . . . although the fact that a party issues a document entitled 'bill of lading' is not in itself determinative") (citations omitted).

Accordingly, the court finds Rang Dong Winery has not sufficiently alleged it is a "carrier" under the COGSA, regardless of the definition or test that may apply. The court GRANTS the motion in this respect, but will allow Rang Dong Winery an opportunity to amend if it can subject to Federal Rule of Civil Procedure 11.

      B.    <u>Whether Rang Dong Winery Has Sufficiently Alleged the Cargo was to be Delivered to a Particular Port</u>

Hillebrand next argues that each of Rang Dong Winery's claims rely on the implausible allegation that the cargo was "to be delivered at a particular terminal in Vietnam." Mot. at 11. Specifically, Hillebrand argues that although Rang Dong Winery alleges the cargo was supposed to be delivered to Cat Lai Port in Ho Chi Minh City, the bill of lading identifies only Ho Chi Minh City, and no particular terminal, as the cargo's destination. *Id.* at 11−12. Because the cargo was delivered to a port in Ho Chi Minh City, though not the Cat Lai Port terminal, Hillebrand argues Rang Dong Winery's claims cannot proceed. *See id.*

Rang Dong Winery counters that it has sufficiently alleged "the customary and planned course required the Cargo to be delivered to Cat Lai Port," citing its allegations that Hillebrand represented the cargo would be delivered to Cat Lai Port, that this representation was consistent with Hillebrand's prior shipments for Rang Dong Winery, and that Hillebrand identified Cat Lai Port as "the correct terminal" after Rang Dong Winery complained the cargo was improperly delivered to Cai Mep Port. Opp'n at 9−10.

These allegations survive at the pleading stage. At the very least, the bill of lading's identification of Ho Chi Minh City as the cargo's destination is ambiguous. If the court were to

7

construe this ambiguity in Hillebrand's favor, it could conclude that the parties' agreement required delivery to any terminal in Ho Chi Minh City. But the court is obligated to construe the pleadings in plaintiff's favor, not defendants', at this juncture. Doing so, it is plausible the parties understood and agreed that "Ho Chi Minh City" refers to a specific terminal in Ho Chi Minh City Port and the court therefore rejects Hillebrand's proffered construction. The motion is denied on this ground.

    C.    <u>Whether Rang Dong Winery Agreed Not to Sue Hillebrand or to Bring Suit in Germany</u>

Hillebrand next argues Rang Dong Winery is bound by Blue Eagle's terms in its bill of lading. One such term provides:

> 8.1 The Merchant agrees not to make any claim against any director, agent, employee or sub-contractor of the Carrier in connection with the Carriage whether or not such claim arises out of the negligence on the part of any of them. If, notwithstanding the provisions of this Clause, such a claim is made, whether by the Merchant or otherwise, every director, agent, employee or sub-contractor shall have the benefit of all provisions herein benefitting the Carrier as if such provisions were expressly for their benefit and in entering into this contract, the Carrier incorporates such provisions not only on its own behalf but also as agent and trustee for such directors, agents, employees and sub-contractors.

Mot. at 14. A separate Blue Eagle term requires "the Customer" to bring any suit in Germany. *Id.* at 15. Hillebrand argues Rang Dong Winery was on notice of these terms because (1) the Ocean Shipping Reform Act of 1998, 46 U.S.C. §§ 40101, *et seq.*, and Federal Maritime Commission regulations require Blue Eagle to publish online sample bills of lading, "provid[ing] Rang Dong with public notice of Blue Eagle's terms and conditions," and (2) "[e]xcerpts of the Blue Eagle Bill of Lading are published on the back of that document." Mot. at 12−13. Neither of these arguments are persuasive on this record.

Hillebrand provides no authority for its position Rang Dong Winery was on notice of these terms simply because they were published online. While Hillebrand argues that "by filing a lawsuit for damages under the bill of lading Rang Dong accepted the terms of the Blue Eagle Lading," it does not explain how Rang Dong Winery accepted those terms if the terms were not part of the bill of lading. *See* Mot. at 13 (citing *All Pac. Trading, Inc. v. Vessel M/V Hanjin Yosu*,

8

7 F.3d 1427, 1432 (9th Cir. 1993) (rejecting defendant's argument that "[p]laintiffs never took any action demonstrating acceptance of the bills of lading" because "[p]laintiffs' initiation of this suit constituted acceptance of the terms of the Hanjin bills of lading")); *see also* Opp'n at 13 (arguing websites and documents containing Blue Eagle's terms were not provided to Rang Dong Winery at time of contracting).

Hillebrand's alternative argument, that excerpts of Blue Eagle's terms were printed on the back of the bill of lading but "[p]laintiff did not include these terms in Exhibit B to its Complaint," is unclear and equally unpersuasive. Mot. at 13. Prior to filing its notice of errata, Hillebrand had filed a four-page bill of lading purporting to memorialize the parties' agreement, with the third and fourth pages providing numerous terms. Original Ex. A, ECF No. 9-1 at 16−19. This exhibit appeared to be, as Rang Dong Winery argues, "a completely different document" than the bill of lading Rang Dong Winery attached to the complaint. Opp'n at 11−13 (describing numerous differences between documents, including that Hillebrand's document is unsigned and includes different page counts and pages than the bill of lading provided as Exhibit B to complaint). In its subsequent notice of errata, and without explaining why it had earlier filed what appears to be a draft or doctored version[6] of the bill of lading specific to the parties' transaction, Hillebrand provided a new Exhibit A. Mot. Ex. A, ECF No. 11 at 18.[7] This exhibit includes a single page of Blue Eagle terms that are not attached to any bill of lading. *See* Mot. at 13 (identifying the motion Exhibit A as "[a] copy of the full terms and conditions of the Blue Eagle Bill of Lading, as published at www.blue-eagle.net" without suggesting such terms were actually provided to Rang Dong).

---

[6] The original Exhibit A and the amended Exhibit A are not accompanied by declarations. Nonetheless, in its originally filed motion, Hillebrand also provided, without clear explanation, what appears to be a copy of the same bill of lading it provided as its original Exhibit A in an attachment to counsel's declaration affirming compliance with the court's meet and confer requirement. Decl., ECF No. 9-2 at 1−2, 13−16. There, the bill of lading followed an email between counsel in which Rang Dong requested "a copy of the actual Bill of Lading that your client contends was provided to Rang Dong." Hillebrand did not include counsel's declaration or its exhibits in its amended motion. *See* Mot.

[7] Although Rang Dong Winery filed its opposition after Hillebrand filed its notice of errata, Rang Dong Winery treats the originally filed Motion Exhibit A as the operative exhibit.

In any event, Hillebrand provides several arguments in support of its claim that Rang Dong Winery is bound by the terms provided as Exhibit A in the amended motion; that is Blue Eagle's sample bill of lading posted on the internet, though not in the actual bill of lading issued to Rang Dong Winery. Hillebrand first argues, "as a matter of law the terms of a carrier's tariff, including the published bill of lading terms, apply to shipments." Reply at 9. Neither of Hillebrand's cited authorities support this argument. *See id.* (citing 46 U.S.C. § 40501(b)(5) (requiring common carriers to keep for public inspection "sample copies of any bill of lading, contract of affreightment, or other document evidencing the transportation agreement" without addressing whether such sample copies are binding on shippers); *Sea-Land Serv., Inc. v. Murrey & Son's Co. Inc.*, 824 F.2d 740, 742 (9th Cir. 1987) (holding "[t]he tariff rate [filed with the Federal Maritime Commission as required under law] is the 'only lawful rate' that can be charged, and the shipper's knowledge of that rate is conclusively presumed" without addressing whether other terms in a sample bill of lading, including limitations of liability and forum selection clauses, are presumptively known by shipper without further notice)).

Hillebrand also argues that other courts have found "[a]dequate notice rather than actual notice is required for the terms of bills of lading" and that principle applies here. Reply at 9 (citing *Good v. Nippon Yusen Kaisha*,[8] No. 1:12-CV-01882-AWI, 2013 WL 2664193, at *9 (E.D. Cal. June 12, 2013)). In *Good*, however, the shipper received documents informing him "in small print that the terms of the sea waybills are available at Defendants' website" and the court thus found those terms were incorporated by reference in the agreement, despite the shipper's lack of actual knowledge of those terms. *Good*, 2013 WL 2664193, at *9. Here, Blue Eagles' terms as published on the internet are not incorporated by reference in the bill of lading, which contains only one reference to terms: "Subject always to the exceptions, limitations, conditions and liberties, extract of which are set out on the reverse side hereof, to which the merchant agrees by accepting this B/L." Compl. Ex. B at 2. The reverse side does not refer to the terms Hillebrand seeks to

---

[8] Hillebrand repeatedly refers to *Good* as "this court's" decision, apparently because another judge in the Eastern District of California issued that order. *See, e.g.*, Reply at 8. The court views decisions by other judges in the Eastern District as at most persuasive, non-binding authority.

enforce here, or to the terms' existence on a website or elsewhere. *See id.* at 3. Hillebrand also argues that because the bill of lading "clearly references terms and conditions on the back of the bill of lading and states that Rang Dong accepts those terms[,] Rang Dong was thus placed on notice to seek those terms out if it believed it did not receive the back of the bill of lading." Reply at 10. In other words, Hillebrand argues Rang Dong Winery reasonably should have assumed terms, in addition to the terms printed on the reverse side of the bill of lading, were incorporated by reference, though there was no actual reference to these additional terms. Hillebrand provides no support for this argument, and the court is unpersuaded.

Without an adequate showing by Hillebrand, the court cannot assume at this stage of proceedings that the Blue Eagle terms Hillebrand seeks to enforce here were provided to Rang Dong Winery such that the winery is bound by those terms. Accordingly, the court does not consider whether Hillebrand may enforce Blue Eagle's purported terms barring Rang Dong Winery from suing Hillebrand and requiring Rang Dong to bring its claims against Hillebrand in Germany. *See* Mot. at 13−16. The motion is denied on these grounds.

IV. CONCLUSION

As explained above, the court GRANTS in part and DENIES in part Hillebrand's motion to dismiss. Within 14 days of this order, Rang Dong Winery may file a first amended complaint consistent with this order

IT IS SO ORDERED.

DATED: July 17, 2019.

_____
UNITED STATES DISTRICT JUDGE

11