UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANG DONG JOINT STOCK COMPANY,<br><br>    Plaintiff,<br><br>        v.<br><br>J.F. HILLEBRAND USA, INC., et al.,<br><br>    Defendants. | No.  2:18-cv-003195-KJM-KJN<br><br><br>ORDER |

In this dispute involving a shipment of spoiled wine, defendants J.F. Hillebrand USA, Inc. and Blue Eagle Consolidation Services move to dismiss plaintiff Rang Dong Joint Stock Company's first amended complaint.  Mot. to Dismiss ("MTD"), ECF No. 25-2.  Relatedly, plaintiff moves to file a second amended complaint, to swap a breach of fiduciary duty claim with an alternative claim for negligence.  Mot. to Amend ("MTA"), ECF No. 30-2.  Plaintiff also moves for leave to serve defendant Blue Eagle through alternative methods under Federal Rule of Civil Procedure 4(f)(3).  Mot. for Service, ECF No. 26-1.  For the reasons set forth below, plaintiff's motion to amend and motion for alternative service are GRANTED.  Accordingly, defendants' motion to dismiss is DENIED as moot.

///

///

///

1

1    I.      BACKGROUND

2           The factual allegations underpinning this case are set forth in detail in the court's

3    order granting in part and denying in part defendants' motion to dismiss.  *See* Mot. to Dismiss

4    Order ("MTD Order"), ECF No. 23, at 1–2.  For resolution of the present motions, the court need

5    only briefly summarize the facts and procedural history here.

6           On February 2, 2018, Rang Dong Joint Stock Company, dba Rang Dong Winery,

7    contracted with defendant Hillebrand to ship three containers of wine to Ho Chi Minh City Cat

8    Lai Port, Vietnam.  First Am. Compl. ("FAC") ¶ 9, ECF No. 24.  Rang Dong alleges Hillebrand

9    represented that the shipment would be delivered to the Cat Lai Port, consistent with prior

10   shipping arrangements between the two parties.  *Id.* ¶ 10.  Without notice, Hillebrand allegedly

11   altered the shipment destination and ultimately delivered the cargo to Cai Mep Port, a different

12   terminal within Ho Chi Minh City Port.  *Id.* ¶ 14; MTD Order at 2.  Rang Dong warned

13   Hillebrand that if left too long at the Cai Mep Port, the cargo could be damaged by the heat in

14   Vietnam at the time.  FAC ¶ 14.  On March 30, 2018, after an eight-day delay, the shipment was

15   transported by barge from the Cai Mep Port to the Cat Lai Port.  *Id.* ¶ 15.  When the shipment

16   arrived at the Cat Lai Port, customs officials and Rang Dong agents examined the contents and

17   determined they were "extensively damaged."  *Id.* ¶ 16.

18          On December 12, 2018, Rang Dong filed suit alleging damages under the Carriage

19   of Goods by Sea Act ("COGSA"), false bill of lading, deviation and breach of fiduciary duty.

20   ECF No. 1.  On July 17, 2019, the court granted in part and denied in part defendants' motion to

21   dismiss the complaint, finding Rang Dong did "not sufficiently allege[] it is a 'carrier' under the

22   COGSA . . . ."  MTD Order at 7.  On July 31, 2019, attempting to cure the deficiencies the court

23   identified in its order, Rang Dong filed the operative first amended complaint, asserting the same

24   four causes of action as in the original complaint.  *See generally* FAC.

25          On August 14, 2019, defendants once again moved to dismiss, arguing Rang

26   Dong's first three causes of action based on COGSA fail as a matter of law and the fourth cause

27   of action fails for lack of fiduciary relationship.  *See* MTD.  Rang Dong opposes the motion, ECF

28   No. 29, and Hillebrand has replied, ECF No. 37.  On September 19, 2019, Rang Dong moved to

1   amend the first amended complaint to replace the breach of fiduciary relationship claim with a

2   negligence claim.  *See* MTA.  Hillebrand opposes the motion, arguing Rang Dong has not shown

3   good cause to amend, nor has it satisfied the requirements for amendment under Federal Rule of

4   Civil Procedure 15(a).  Opp'n to MTA, ECF No. 34.  Rang Dong has lodged a reply.  Reply to

5   MTA, ECF No. 38.

6           Rang Dong also moves to serve defendant Blue Eagle, a German corporation, via

7   alternative service under Federal Rule of Civil Procedure 4(f)(3) because, it says, Blue Eagle is

8   evading service of process.  Mot. for Service.  Hillebrand opposes, arguing that Rang Dong's

9   proposed method of service is impermissible, Opp'n to Mot. for Service, ECF No. 34, and Rang

10  Dong has lodged a reply, Reply to Mot. for Service, ECF No. 35.

11          On December 9, 2019, the court submitted the matters for resolution by written

12  order.

13  II.    DISCUSSION

14      A.    Motion to Amend Complaint

15          1.    Legal Standard

16          A party seeking leave to amend pleadings after a deadline specified in the

17  scheduling order must first satisfy Federal Rule of Civil Procedure 16(b)'s "good cause" standard.

18  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608–09 (9th Cir. 1992).  Under Rule 16(b),

19  "[a] schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P.

20  16(b)(4).  Distinct from Rule 15(a)'s liberal amendment policy, Rule 16(b)'s good cause standard

21  focuses primarily on the diligence of the moving party and its reasons for seeking modification.

22  *Johnson*, 975 F.2d at 609.

23          If good cause exists, the movant next must satisfy Rule 15(a).  *Id.* at 608 (citing

24  approvingly *Forstmann v. Culp*, 114 F.R.D. 83, 85 (M.D.N.C. 1987), for its explication of this

25  order of operations).  Federal Rule of Civil Procedure 15(a)(2) provides, "[t]he court should

26  freely give leave [to amend its pleading] when justice so requires" and the Ninth Circuit has

27  "stressed Rule 15's policy of favoring amendments."  *Ascon Props., Inc. v. Mobil Oil Co.*, 866

28  F.2d 1149, 1160 (9th Cir. 1989).  "In exercising its discretion [regarding granting or denying

3

1    leave to amend] 'a court must be guided by the underlying purpose of Rule 15—to facilitate

2    decision on the merits rather than on the pleadings or technicalities.'"  *DCD Programs, Ltd. v.*

3    *Leighton et al.*, 833 F.2d 183, 186 (9th Cir. 1987) (quoting *United States v. Webb*, 655 F.2d 977,

4    979 (9th Cir. 1981)).  Courts consider five factors in determining whether justice requires

5    allowing amendment under Rule 15(a): "bad faith, undue delay, prejudice to the opposing party,

6    futility of the amendment, and whether the party has previously amended his pleadings."

7    *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004) (citation omitted); *Bonin v. Calderon*,

8    59 F.3d 815, 845 (9th Cir. 1995) (citing *Western Shoshone Nat'l Council v. Molini*, 951 F.2d 200,

9    204 (9th Cir. 1991)).

10           2.   Analysis

11           Rang Dong requests leave to file a second amended complaint replacing its breach

12    of fiduciary duty claim with a negligence claim.  MTA at 3.  Rang Dong argues Rule 16's "good

13    cause" standard is satisfied because it diligently sought amendment and its reasons for

14    amendment are compelling.  *Id.* at 4–5.  Rang Dong also argues that all five Rule 15(a) factors—

15    bad faith, undue delay, prejudice to the opposing party, futility of the amendment, and whether

16    the party has previously amended its pleadings—are satisfied, thus justifying leave to file a

17    second amended complaint.  *Id.* at 5–9.

18           Hillebrand contends no "good cause" exists to amend the complaint because Rang

19    Dong failed to act diligently in analyzing the viability of its proposed negligence claim and in

20    moving to amend the complaint.  Opp'n to MTA at 2–5.  Moreover, Hillebrand asserts the Rule

21    15(a) factors favor denial because Rang Dong's motion is made in bad faith, defendants will be

22    prejudiced if amendment is allowed and the motion is futile.  Opp'n to MTA at 5–12.

23           Having considered all relevant factors under Rule 16 and Rule 15(a), the court

24    finds amendment is warranted here.

25           a)   Modification of Scheduling Order – "Good Cause" Under Rule 16

26           The court's May 28, 2019 scheduling order provides that no amendment to the

27    pleadings is "permitted without leave of court, good cause having been shown."  Sched. Order,

28    ECF No. 22, at 2.   The focus of a "good cause" inquiry is "the moving party's reasons for

4

1    seeking modification." *Johnson*, 975 F.2d at 609. "What constitutes good cause sufficient to

2    justify the modification of a scheduling order necessarily varies with the circumstances of each

3    case." 6A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1522.2 (3d

4    ed. 2019).

5         Rang Dong asserts that after having first been advised of Hillebrand's position that

6    Hillebrand was not a "carrier" under COGSA as argued in its first motion to dismiss, *see* ECF No.

7    9, Rang Dong then informed Hillebrand of its intent to amend the complaint and incorporate a

8    negligence claim. MTA at 4. Rang Dong's intent to include a negligence claim is specifically

9    referenced in the parties' Rule 26(f) joint status report filed April 5, 2019, three months after

10   Hillebrand filed its first motion to dismiss. *See* ECF No. 14 at 4 ("Rang Dong Winery expects to

11   amend its Complaint to add claims against Hillebrand. At this time, Rang Dong Winery is

12   analyzing potential claims for negligence and breach of contract against Hillebrand."). Rang

13   Dong explains it chose not to seek immediate amendment prior to resolution of Hillebrand's

14   pending motion to dismiss because the court's order on the motion could influence Rang Dong's

15   decision to pursue a negligence claim. MTA at 4–5.

16        After the court ruled on the motion to dismiss, Rang Dong filed a first amended

17   complaint, but omitted its negligence claim because the court's order "did not authorize Rang

18   Dong Winery to add any new claims to its complaint . . . ." *Id.* at 5. Rang Dong asserts it was not

19   until the parties' August 9, 2019 meet and confer efforts regarding Hillebrand's anticipated

20   motion to dismiss that it could have moved to amend the complaint to include the negligence

21   claim. *Id.* Rang Dong argues that moving prior to resolution of the first motion to dismiss

22   "would [have] be[en] a waste of the parties' and the Court's resources if the Court decided

23   ultimately to dismiss the entire action . . . ." *Id.* Therefore, Rang Dong believes it has acted

24   diligently in moving to amend and presenting compelling reasons for modification of the

25   scheduling order. *Id.*

26        Hillebrand argues Rang Dong had eighteen months—nine months between the

27   alleged injury and the filing of the initial complaint, then nine additional months between the

28   initial complaint and moving for amendment—to incorporate the negligence claim but failed to

do so.  Opp'n to MTA at 3.  Furthermore, Rang Dong's argument it was unaware of Hillebrand's position that Hillebrand was not a "carrier" under COGSA is without merit because Hillebrand clearly stated its position in early meet and confer communications.  *Id.* (citing Stroud Decl., Ex. A, ECF No. 9-2, at 5–7 (meet and confer letter)).

Although Rang Dong's reasons for its delay are not the most compelling, the court nonetheless finds modifying the scheduling order to allow another opportunity to amend the complaint is appropriate.  The court possesses great latitude to control the pretrial phase of litigation, and its decisions to that end will not be disturbed absent clear abuse of discretion. *Johnson*, 975 F.2d at 607 (citing *Miller v. Safeco Title Ins. Co.*, 758 F.2d 364, 369 (9th Cir. 1985)).  Although the court's order on Hillebrand's first motion to dismiss contained no express limitation on the ability to bring new claims on amendment, *see* MTD Order at 7, Rang Dong's failure to include a negligence claim in the first amended complaint is not fatal.  At the time the court issued its order on the motion to dismiss, the operative scheduling order was already in effect.  *Compare* Sched. Order (issued May 28, 2019), *with* MTD Order (issued July 17, 2019).  Thus, Rang Dong's apparent belief that any amendment beyond what the motion to dismiss order expressly allowed was subject to a showing of good cause is not wholly unfounded.

Moreover, the delay between Rang Dong's filing its first amended complaint, FAC (filed July 31, 2019), and moving to amend, MTA (filed September 19, 2019), is justified given Hillebrand's initial representation it would stipulate to amendment.  MTA at 2–3; Tran Decl. ¶¶ 11–12, ECF No. 30-3, Ex. A (August 14, 2019 email from Hillebrand's counsel stating "Hillebrand will stipulate that Plaintiff may file an amended complaint as you have detailed below"); *but see id.* Ex. B (August 20, 2019 email from Hillebrand's counsel stating Hillebrand "cannot agree to stipulate for your client to file another amended complaint").  Additionally, even if Rang Dong's decision to wait for the court to issue its order on the first motion to dismiss order before seeking to further amend the complaint occasioned some inefficiency, there is some logic to the decision given the central issues at play in the case.  MTA at 5.  Were the court to determine Hillebrand was not a "carrier" under COGSA and that the bill of lading barred suit against Hillebrand, amendment thereafter would likely have been futile.

6

Although prejudice to the opposing party is not central to a Rule 16 "good cause" analysis, it may supply additional support for the court's conclusion. *Johnson*, 975 F.2d at 609. Hillebrand argues it will be prejudiced by the court's allowing further amendment because in order for the negligence claim to be deemed timely under the terms of the bill of lading, the court would have to find the claim relates back to the date of the initial complaint; such a finding would allow Rang Dong to contravene the terms of the bill of lading. Opp'n to MTA at 5, 7, 9. The court finds permitting amendment alone will cause no such prejudice because the court at this point is making no findings regarding the merits of each claim. Rather, Hillebrand will remain free to attack the substance of Rang Dong's second amended complaint once it is filed. Given the court's strong interest in resolving disputes on the merits, this interest carries great weight where the showing of prejudice is slim as here. *DCD Programs*, 833 F.2d at 186.

Finally, allowing amendment will not significantly disrupt the progression of this case. The parties have yet to exchange initial disclosures, defendant Blue Eagle has yet to be served and discovery has yet to commence. MTA at 6; Sched. Order at 2. Even if discovery had begun, Rang Dong's proposed negligence claim is based on the same facts alleged in the original complaint, and thus the need for additional discovery is modest if not completely unlikely. *Id.* at 8; *see generally* Opp'n to MTA (making no argument negligence claim based on new facts). And, assuming defendants renew their motion to dismiss the second amended complaint, any additional delay between motions will likely have little impact on the court's ability to address the motion in a timely fashion.

For each of these reasons, Rang Dong has shown good cause under Rule 16 that modification of the scheduling order is justified to permit filing its second amended complaint.

b)      Amendment Under Rule 15(a)

Having satisfied Rule 16's "good cause" requirement, Rang Dong now must "demonstrate that amendment [is] proper under Rule 15." *Johnson*, 975 F.2d at 608 (citing *Forstmann*, 114 F.R.D. at 85). In considering each of the amendment factors[1]—bad faith, undue

---

[1] These factors are also commonly referred to as the *Foman* factors, based on the Supreme Court's discussion in *Foman v. Davis*, 371 U.S. 178, 182 (1962).

7

1  delay, prejudice to the opposing party, futility of the amendment, and whether the party has

2  previously amended its pleadings—the court is guided by Rule 15(a)(2)'s instruction that it must

3  "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "This policy is 'to be

4  applied with extreme liberality.'" *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051

5  (9th Cir. 2003) (citation omitted).

6          Of the five factors, two are given considerable weight: prejudice to the opposing

7  party and futility of amendment. *See id.* at 1052 ("[I]t is the consideration of prejudice to the

8  opposing party that carries the greatest weight."); *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir.

9  1995) ("[E]ach [factor] is not given equal weight. Futility of amendment can, by itself, justify the

10  denial of a motion for leave to amend."). Given their importance, the court considers these two

11  factors first.

12                    (1)    Prejudice to Hillebrand and Futility of Amendment

13          For many of the same reasons discussed above with respect to Rule 16,

14  amendment will not prejudice Hillebrand, nor is it futile. By granting leave to amend, the court

15  does not prejudge the viability of Rang Dong's negligence claim, including whether the claim

16  relates back to the date of the initial complaint. The relation back doctrine under Rule 15(c) sets

17  forth a specific standard and demands adequate consideration at the appropriate time. *See, e.g.*,

18  *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1004–05 (9th Cir. 2014) (discussing relation

19  back doctrine). It would be premature to resolve relation back at this stage, on the limited

20  briefing of the issue the parties provide. *See* MTA at 8–9; Opp'n to MTA at 5, 7, 9. Amendment

21  will not prejudice Hillebrand or permit Rang Dong to advance a wholly futile claim.

22          Hillebrand also argues amendment would be futile because the proposed second

23  amended complaint "completely fails to allege the existence of any duty owed by Hillebrand."

24  Opp'n to MTA at 10. Amendment is futile, as Hillebrand asserts, "when the proffered

25  amendment merely restates the same facts using different language, or reasserts a claim

26  previously determined." *Wakeen v. Hoffman House, Inc.*, 724 F.2d 1238, 1244 (7th Cir. 1983)

27  (citing *Kasey v. Molybdenum Corporation of America*, 467 F.2d 1284, 1285 (9th Cir.), *cert.*

28  *denied*, 409 U.S. 1063 (1972)). However, in determining futility, the court effectively tests the

1    sufficiency of the allegations under Rule 8(a)(2).  Hillebrand offers no authority for the legal

2    elements of a negligence claim of the sort Rang Dong wishes to bring here, asserting negligence

3    with respect to shipment of goods by sea.  Hillebrand merely contends, "Rang Dong has set forth

4    no facts as to why Hillebrand had any duty or was negligent in arranging any aspect of the

5    shipment."  Opp'n to MTA at 11.  Rang Dong's proposed negligence claim ultimately may well

6    be subject to yet another motion to dismiss, but there Hillebrand has not identified a reason to bar

7    the claim at this stage.

8        For these reasons, the court is persuaded Hillebrand will not be greatly prejudiced

9    by amendment, nor is it readily apparent that amendment is futile.

10                        (2)      Bad Faith and Undue Delay

11        Bad faith is evident where "the plaintiff merely is seeking to prolong the litigation

12   by adding new but baseless legal theories."  *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 881

13   (9th Cir. 1999); *Trans Video Elecs., Ltd. v. Sony Elecs., Inc.*, 278 F.R.D. 505, 510 (N.D. Cal.

14   2011) ("[T]he Court agrees . . . the motion to amend was taken in bad faith, more specifically, as

15   a last-ditch attempt to avoid the case being dismissed in its entirety."), *aff'd*, 475 F. App'x 334

16   (Fed. Cir. 2012).  "A court may also find bad faith when the moving party has a 'history of

17   dilatory tactics.'"  *Naranjo v. Bank of Am. Nat'l Ass'n*, No. 14-CV-02748-LHK, 2015 WL

18   913031, at *5 (N.D. Cal. Feb. 27, 2015).

19        Here, there is no evidence of bad faith by Rang Dong necessitating denial of the

20   opportunity to amend.  Rang Dong maintains there is no bad faith because it seeks to trade its

21   breach of fiduciary duty claim for a negligence claim specifically in response to Hillebrand's

22   argument that Hillebrand is not a "carrier" under COGSA.  MTA at 7.  Hillebrand, on the other

23   hand, argues Rang Dong is acting in bad faith because it knew, or should have known, Hillebrand

24   was not acting as a "carrier" as defined by COGSA.  Opp'n to MTA at 6.  Hillebrand further

25   argues Rang Dong exhibited bad faith in advancing its argument that Hillebrand provided a

26   "doctored bill of lading" in support of its motion to dismiss.  *Id.*  Finally, Hillebrand contends bad

27   faith is evident in Rang Dong's tactic of moving to replace the fiduciary duty claim Hillebrand in

28   the face of the current motion to dismiss.  *Id.*

1      Nothing before the court supports the conclusion Rang Dong has acted in bad

2  faith.  Failure to assert a known or existing claim does not, by itself, constitute ill will by the

3  withholding party.  *See Chang Bee Yang v. Sun Tr. Mortg., Inc.*, No. 1:10-CV-01541-AWI, 2011

4  WL 2433640, at *4 (E.D. Cal. June 14, 2011) ("Even assuming the basis for Plaintiffs'

5  amendment was known at the time of the initial complaint, that is not, by itself, objective

6  evidence of bad faith or tactical gamesmanship.").  Neither does the fact Rang Dong moved to

7  amend after Hillebrand filed its most recent motion to dismiss.  *See Naranjo*, 2015 WL 913031, at

8  *6 ("[W]here, as here, a plaintiff files a motion to amend after a defendant files a motion to

9  dismiss, courts will still grant the motion to amend absent an independent showing by the

10  defendant of at least one of the *Foman* factors.").  Finally, as to Hillebrand's argument that bad

11  faith is evident in Rang Dong's assertion that Hillebrand "doctored" the bill of lading offered in

12  support of its motion to dismiss, the court's prior order noted there was some support for Rang

13  Dong's argument on this point.  *See* MTD Order at 9 n.6.  Rang Dong's arguments based on the

14  bill of lading did not amount to bad faith.

15      As to undue delay, Hillebrand repeatedly says that Rang Dong unduly delayed in

16  filing its motion to amend but provides no substantive argument regarding delay.  As noted

17  above, Rang Dong did not move as expeditiously as it could have to amend; nonetheless, the

18  delay here is not the type that justifies denying the opportunity to amend.  *See, e.g.*, *Naranjo*,

19  2015 WL 913031, at *7 (affirming denial of motion for leave to amend because of undue delay

20  where, *inter alia*, moving party sought amendment "eight months after the district court granted

21  summary judgment against it, and nearly two years after filing the initial complaint," and "after

22  discovery was over, just four and a half months before the trial date" (citation omitted)); *Jordan*

23  *v. Los Angeles County*, 669 F.2d 1311, 1324 (9th Cir. 1982) (affirming denial of motion for leave

24  to amend because of undue delay where the proposed amendment "would have required [the

25  defendant] to conduct extensive, costly discovery in order to respond to the amended complaint"),

26  *vacated on other grounds*, 459 U.S. 810 (1982); *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir.

27  1994) (affirming denial of leave to amend because of undue delay where moving party sought

28  amendment after discovery was completed and trial was only two months away, thereby

1  substantially prejudicing defendant), *overruled on other grounds by City of Dearborn Heights Act*
2  *345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605 (9th Cir. 2017).

3          Here, initial disclosures have yet to be exchanged, discovery is months from
4  completion, the court has not made any dispositive rulings and a trial date has yet to be scheduled.
5  Given the procedural posture of this case, any delay in moving to amend has a minimal impact on
6  the fair and substantive resolution of the case.  Even if there had been undue delay, that factor
7  alone is insufficient to deny opportunity to amend.  *Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir.
8  1999).

9                          (3)    Previous Amendment

10          In terms of previous amendment, while Rang Dong has once before amended its
11  complaint, it has not "repeated[ly] fail[ed] to cure deficiencies by amendments previously
12  allowed."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  This factor favors amendment.

13                  3.    Conclusion

14          For each of the reasons discussed above, Rang Dong has established "good cause"
15  to amend the complaint under Rule 16 and established that amendment is proper under Rule
16  15(a).  Therefore, Rang Dong's motion to amend is GRANTED.

17          B.    Motion for Alternative Service

18                  1.    Legal Standard

19          Federal Rule of Civil Procedure 4(h) governs service of a foreign corporation.  A
20  foreign corporation may be served "at a place not within any judicial district of the United States,
21  in any manner prescribed by Rule 4(f) for serving an individual . . . ."  Fed. R. Civ. P. 4(h)(2).
22  Under Rule 4(f), a foreign party may be served:

23                  (1) by any internationally agreed means of service that is reasonably
                    calculated to give notice, such as those authorized by the Hague
24                  Convention on the Service Abroad of Judicial and Extrajudicial
                    Documents;
25
                    (2) if there is no internationally agreed means, or if an international
26                  agreement allows but does not specify other means, by a method that
                    is reasonably calculated to give notice:
27
                            (A) as prescribed by the foreign country's law for service in
28                          that country in an action in its courts of general jurisdiction;

(B) as the foreign authority directs in response to a letter rogatory or letter of request; or

(C) unless prohibited by the foreign country's law, by:

(i) delivering a copy of the summons and of the complaint to the individual personally; or

(ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

(3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).

Rule 4(f) provides three distinct options for service, with no one contingent upon exhaustion of another. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002). Thus, if a party chooses Rule 4(f)(3) as its method of service, there are "no qualifiers or limitations which indicate its availability only after attempting service of process by other means." *Id.* Indeed, allowing "service of process under Rule 4(f)(3) is neither a 'last resort' nor 'extraordinary relief.'" *Id.* (quoting *Forum Fin. Grp., LLC v. President, Fellows of Harvard Coll.*, 199 F.R.D. 22, 23 (D. Me. 2001)).

"As [is] obvious from its plain language, service under Rule 4(f)(3) must be (1) directed by the court; and (2) not prohibited by international agreement. No other limitations are evident from the text." *Guifu Li v. A Perfect Day Franchise, Inc.*, 281 F.R.D. 373, 388 (N.D. Cal. 2012) (alteration in original) (quoting *Rio Props.*, 284 F.3d at 1014). "Additionally, any method of service of process 'must also comport with constitutional notions of due process,' i.e., they must be 'reasonably calculated, under all the circumstances,' to apprise interested parties of the action and provide them with an opportunity to respond." *Id.* (quoting *Rio Props.*, 284 F.3d at 1016).

    2.   <u>Analysis</u>

After two unsuccessful attempts to serve Blue Eagle Consolidation Services, a German corporation, under the Hague Convention, Rang Dong moves under Federal Rule of Civil Procedure 4(f)(3) for court authorization to serve Blue Eagle through its U.S.-based counsel,

1   Messrs. Stroud and Danas.  Rang Dong contends this proposed method of service is permissible

2   because (1) it is not prohibited by the Hague Convention; (2) it is reasonably calculated to apprise

3   Blue Eagle of this action; and (3) Blue Eagle's counsel's representation that they are not

4   authorized to accept service on Blue Eagle's behalf is irrelevant to the analysis.  Mot. for Service

5   at 5–11.

6            In opposition, Hillebrand argues Rang Dong is now taking a position contrary to

7   the position it adopted in opposing Hillebrand's first motion to dismiss.  Opp'n to Mot. for

8   Service at 2–3.  There, Rang Dong claimed Hillebrand was not an agent of Blue Eagle, thus

9   potentially exposing Hillebrand to liability as a "carrier" under COGSA; now, however, to obtain

10  the benefit of alternative service, Rang Dong argues Hillebrand is an agent of Blue Eagle, thus

11  permitting service through Hillebrand or its counsel.  *Id.*  Hillebrand also argues Rule 4(f)(3) is

12  subject to Rule 4(e)(1), which requires compliance with state law for service of summons.  *Id.* at

13  2.  Therefore, in order to effectuate service, Hillebrand argues, Rang Dong must comply with

14  California Code of Civil Procedure section 416.10(b) by serving Blue Eagle through an

15  authorized agent.  *Id.*

16           In reply, Rang Dong notes Hillebrand does not dispute that Messrs. Stroud and

17  Danas represent Blue Eagle, and also argues service of a foreign defendant through U.S.-based

18  counsel is a permissible form of alternative service and that, as Blue Eagle's agent, Hillebrand

19  would inform Blue Eagle of the service of process and the pending action.  Reply to Mot. for

20  Service at 1.  Rang Dong also argues Hillebrand lacks standing to oppose the motion because it is

21  an unaffected party and its opposition was not filed on Blue Eagle's behalf, *id.* at 2, and reiterates

22  its positions that agency is irrelevant when determining adequacy of service under Rule 4(f)(3),

23  and Rule 4(e)(1) has no bearing on service under Rule 4(f)(3) because the two rules are mutually

24  exclusive.  *Id.* at 3.

25  /////

26  /////

27  /////

28  /////

a)  Rang Dong's Proposed Method of Service is Not Prohibited by International Agreement

As the Ninth Circuit explained in *Rio Properties*, *supra*, alternative service under Rule 4(f)(3) must be (1) directed by the court and (2) not prohibited by international agreement. 284 F.3d at 1014.  Because Blue Eagle is a German corporation, and Germany is a signatory to the Hague Convention, the Hague Convention is the controlling international agreement for service upon a German corporation.  *Am. GNC Corp. v. GoPro, Inc.*, No. 18-CV-00968-BAS-BLM, 2018 WL 6262934, at *1 (S.D. Cal. June 4, 2018) ("The United States and Germany are parties to the Hague Convention and thus Plaintiff may serve Defendants pursuant to the Hague Convention with no court order."); *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004) ("Because service of process was attempted abroad, the validity of that service is controlled by the Hague Convention, to the extent that the Convention applies.").  Moreover, when attempting service through the Hague Convention, service must be processed through the "receiving country's 'Central Authority,' which the Convention requires each signatory nation to establish to act as an agent to receive a request for service, arrange for service of documents, and return proofs of service."  *Am. GNC Corp.*, 2018 WL 6262934, at *1.

Here, Rang Dong twice attempted to serve Blue Eagle under the Hague Convention.  First, on December 13, 2019, Rang Dong, through use of an outside vendor, attempted to effectuate service under the Hague Convention, by way of the Central Authority, at the German address listed on the bill of lading for the goods shipped here.  Mot. for Service at 1–2; Tran Decl. ¶ 2, ECF No. 26, Ex. A (Dec. 13, 2019 email authorizing service).  On March 26, 2019, the Central Authority notified Rang Dong that the Authority was unable to complete service of process.  *Id.* at 2.  On April 1, 2019, after locating an alternative address, Rang Dong again authorized its outside vendor to serve Blue Eagle under the Hague Convention.  *Id.*; Tran Decl. ¶ 4, Ex. C (April 1, 2019 email authorizing service).  On July 22, 2019, the Central Authority once again notified Rang Dong it was unable to complete service of process.  *Id.*

1    　　　The court is satisfied Rang Dong has diligently attempted to serve Blue Eagle

2    under the Hague Convention to no avail, even if it need not make such a finding.  *Cf. U.S.*

3    *Aviation Underwriters, Inc. v. Nabtesco Corp.*, No. C07-1221RSL, 2007 WL 3012612, at \*2

4    (W.D. Wash. Oct. 11, 2007) (denying motion for alternative service where plaintiff's only

5    contention was that service under Rule 4(f)(3) would "be much faster").

6    　　　Importantly at this juncture, the Hague Convention does not prohibit Rang Dong's

7    proposed method of service.  In *Volkswagenwerk Aktiengesellschaft v. Schlunk*, the Supreme

8    Court addressed the applicability of the Hague Convention when attempting to serve a foreign

9    corporation through domestic channels.  486 U.S. 694 (1988).  The Court explained, "[t]he only

10   transmittal to which the Convention applies is a transmittal abroad that is required as a necessary

11   part of service."  *Id.* at 707; *CJ E&M Am., Inc. v. iQiyi, Inc.*, No. CV 18-5771 PA (JEMx), 2018

12   WL 6380751, at \*3 (C.D. Cal. Aug. 13, 2018) ("[B]ecause the Convention applies only where

13   documents for service are 'transmitted abroad,' service effected within the United States does not

14   implicate the Convention." (citing *Schlunk*, 486 U.S. at 707)); *Brown v. China Integrated Energy,*

15   *Inc.*, 285 F.R.D. 560, 564 (C.D. Cal. 2012) ("If valid service occurs in the United States . . . the

16   Convention is not implicated regardless of the location of the party.").  Hillebrand does not

17   contend otherwise.  *See generally* Opp'n to Mot. for Service.  Because Rang Dong now seeks to

18   serve Blue Eagle through its U.S.-based counsel, the Hague Convention is inapplicable, and thus

19   does not prohibit this proposed method of service.

20   　　　　　b)　　Rang Dong's Proposed Method of Service is Reasonably
21   　　　　　　　　Calculated to Apprise Blue Eagle of this Action

22   　　　Alternative service under Rule 4(f)(3) must also "comport with constitutional

23   notions of due process," meaning "the method of service crafted by the district court must be

24   'reasonably calculated . . . to apprise interested parties of the pendency of the action and afford

25   them an opportunity to present their objections.'"  *Rio Props.*, 284 F.3d at 1016–17 (quoting

26   *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).  Here, Rang Dong's

27   proposed method of service satisfies due process.

28

15

1          The facts of *Rio Properties* are sufficiently analogous to those of this case to

2    support this conclusion.  In *Rio Properties*, plaintiff, a hotel and casino operator, sued defendant,

3    a foreign internet company, for trademark infringement.  284 F.3d at 1012.  Plaintiff first

4    attempted to effectuate service of process at a Miami, Florida address registered to defendant.  *Id.*

5    at 1013.  That address, however, actually housed defendant's international courier, IEC, which

6    was not authorized to accept service on defendant's behalf but did agree to forward the summons

7    and complaint to defendant's Costa Rican courier.  *Id.*  After receiving the summons and

8    complaint from IEC, defendant consulted a Los Angeles-based attorney about how to respond.

9    *Id.*  When the attorney contacted plaintiff about the suit, plaintiff asked him to accept service on

10    defendant's behalf.  *Id.*  He declined, but asked plaintiff to notify him when service was

11    completed.  *Id.*  After exhausting conventional means, and unable to serve defendant in Costa

12    Rica, plaintiff moved for alternative service of process.  *Id.*  The district court granted the motion,

13    authorizing service by mail to the Los Angeles-based attorney and IEC, and by email to defendant

14    directly.  *Id.*

15          In affirming the district court's authorization of this manner of service, the Ninth

16    Circuit found, as pertinent here, service upon the Los Angeles-based attorney was "appropriate

17    because he had been specifically consulted by [defendant] regarding this lawsuit."  *Id.* at 1017.

18    He "knew of [defendant's] legal positions . . . [and] was in contact with [defendant] in Costa

19    Rica."  *Id.*   The court also blessed service by email, and, weighing the novelty of the proposition,

20    reasoned that "the Constitution does not require any particular means of service of process, only

21    that the method selected be reasonably calculated to provide notice and an opportunity to be

22    heard."  *Id.* (citing *Mullane*, 339 U.S. at 314).  The court further explained, "this broad

23    constitutional principle unshackles the federal courts from anachronistic methods of service and

24    permits them entry into the technological renaissance."  *Id.*

25          Given the circumstances in *Rio Properties*, and the reasoning underlying the Ninth

26    Circuit's decision, the court's responsibility under Rule 4(f)(3) is to ensure Rang Dong's

27    proposed method of service is reasonably calculated to put Blue Eagle on notice of the suit

28    against it.  In acting upon this responsibility, the court is not, as Hillebrand asserts, restrained by

16

1   traditional notions of agency because Rule 4(f)(3) provides for the exercise of judicial discretion

2   that takes account of all available, meaningful contemporary means of service.  In *Brown v.*

3   *China Integrated Energy, Inc.*, the court considered the foreign defendant's contention that

4   neither its counsel nor its registered agent were permissible channels of service because neither

5   had been authorized to accept service on defendant's behalf.  285 F.R.D. at 562.   In rejecting this

6   argument and granting plaintiff's proposed method of service, the court explained:

> Due process does not require that the individuals served on behalf of foreign defendants have represented them or been authorized to accept service on their behalf. Instead, "[t]he reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected."

11   *Id.* at 565 (alteration in original) (quoting *Mullane*, 339 U.S. at 315).  Because of this, "[s]ervice

12   upon a foreign defendant's United States-based counsel is a common form of service ordered

13   under Rule 4(f)(3)."  *Richmond Techs., Inc. v. Aumtech Bus. Sols.*, No. 11-CV-02460-LHK, 2011

14   WL 2607158, at *13 (N.D. Cal. July 1, 2011); *see also Knit With v. Knitting Fever, Inc.*, No.

15   CIV.A. 08-4221, 2010 WL 4977944, at *4 (E.D. Pa. Dec. 7, 2010) ("Repeatedly, courts around

16   the country have found that service upon a foreign defendant through counsel is appropriate 'to

17   prevent further delays in litigation.'" (citation omitted)); *Latinamerican Theatrical Grp., LLC v.*

18   *Swen Int'l Holding*, No. CV 13-1270 CAS (RNBx), 2013 WL 3357650, at *1 (C.D. Cal. July 2,

19   2013) (authorizing service of foreign defendant through U.S.-based counsel because he was "in

20   contact with [defendant] and [was] familiar with [the] case.").

21          Evaluated in light of the core principles of ensuring service reasonably calculated

22   to give notice so as to satisfy due process, Hillebrand's contention that Rang Dong's proposed

23   method of service is impermissible under Rule 4(e)(1) lacks merit.  Opp'n to Mot. for Service at

24   2.  Rule 4(e)(1) provides permissible means of serving individuals within a judicial district of the

25   United States.  Fed. R. Civ. P. 4(e)(1).  Rule 4(e)(1) does not, however, limit the reach Rule

26   4(f)(3), expressly or impliedly.  Hillebrand provides no authority to the contrary.

27          Hillebrand's citation to *Khachatryan v. Toyota Motor Sales, U.S.A., Inc.*, 578 F.

28   Supp. 2d 1224 (C.D. Cal. 2008), is unavailing.  Opp'n to Mot. for Service at 2.  *Khachatryan*

1    involved service of an international defendant under Rule 4(h)(1), which requires compliance

2    under Rule 4(e)(1) with the rules of the state in which service is attempted.  *Khachatryan* contains

3    no discussion of the proposition Hillebrand advances here; in fact, it makes no reference to Rule

4    4(f) at all, or the purported conflict between Rule 4(f)(3) and 4(e)(1).

5          The case of *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222,

6    1240 (Fed. Cir. 2010), gives the lie to Hillebrand's argument.  In *Nuance*, the foreign defendant

7    argued plaintiff failed to comply with California law when attempting to serve its U.S.-based

8    subsidiary, located in California.  *Id.*  Rejecting this argument, the court explained:

9          This argument confuses service of process under Rule 4(f)(3), which
            provides for court-directed service "by any means not prohibited by
10          international agreement," with service under Rule 4(e)(1), which
            does not require a court-order and provides for service by "following
11          state law."  Under California law, a foreign corporation may be
            served by serving that corporation's "general manager in [the] state."
12          *See Gray v. Mazda Motor of Am.*, 560 F. Supp. 2d 928, 929–30
            (C.D.Cal.2008).  However, this does not foreclose substituted service
13          on others under Rule 4(f)(3). *See Rio Props.*, 284 F.3d at 1017
            ("Without hesitation, we conclude that each alternative method of
14          service of process ordered by the district court was constitutionally
            acceptable.").
15

16    626 F.3d 1222, 1240.  Moreover, the circumstances of *Rio Properties* appear to foreclose

17    Hillebrand's argument: in authorizing service upon the foreign defendant's California-based

18    counsel, the court made no reference to compliance with California law under Rule 4(e)(1).  *Rio*

19    *Props.*, 284 F.3d at 1014–16; *see, e.g.*, *Latinamerican*, 2013 WL 3357650, *1–2 (providing no

20    discussion of Rule 4(e)(1).

21          Finally, the limitation Hillebrand reads into the Rule produces an absurd result.  If

22    Rule 4(f)(3) were limited by California's service rules, as required by Rule 4(e)(1), then Blue

23    Eagle would essentially be immune from service because it has no U.S.-based entity or agent

24    authorized to accept service on its behalf and attempts under the Hague Convention have been

25    futile.  These circumstances provide the very reason Rule 4(f)(3) exists: to allow courts, upon

26    request, to craft a method of service consistent with due process and reasonably calculated to

27    provide notice to the defending party.  *See Brockmeyer*, 383 F.3d at 805 ("The decision whether

28

1    to allow alternative methods of serving process under Rule 4(f)(3) is committed to the 'sound

2    discretion of the district court.'" (quoting *Rio Props.*, 284 F.3d at 1016)).

3              The service plan Rang Dong proposes here is reasonably calculated to give Blue

4    Eagle notice of the pending suit and opportunity to respond.  Although Messrs. Stroud and Danas

5    are not authorized to accept service on Blue Eagle's behalf, Opp'n to Mot. for Service at 1–2,

6    they are nonetheless counsel of record for Blue Eagle and best positioned to facilitate service.  In

7    a December 26, 2018 email exchange with Rang Dong's counsel, Mr. Danas stated: "We do

8    represent Blue Eagle.  However, at this time we are not authorized to accept service on their

9    behalf."  Tran Decl. ¶ 7, Ex. F.  Documents filed with the court also reflect the relationship

10   between counsel and Blue Eagle.  The January 3, 2019 stipulation to extend time to respond to the

11   complaint, ECF No. 7, the January 17, 2019 motion to dismiss, ECF No. 9, and the April 5, 2019

12   joint status report, ECF No. 14, all list Mr. Stroud as the attorney of record for Hillebrand and

13   Blue Eagle.  And Mr. Stroud was retained by Blue Eagle and Hillebrand as local counsel in this

14   matter.  Tran Decl. ¶ 7, Ex. F.

15             Also, on August 8, 2019, Mr. Danas sent a meet and confer letter discussing a

16   potential motion to dismiss the first amended complaint.  Tran Decl. ¶ 9, Ex. H.  The letter's

17   opening line states: "As you know, this law firm represents Defendant J.F. Hillebrand USA, Inc.

18   [] and Blue Eagle Consolidation Services in the above-referenced matter."  *Id.*   The letter is

19   signed by Mr. Danas and copied to Mr. Stroud and his co-counsel.  *Id.*  Based on this record and

20   the representations made at hearing, Messrs. Stroud and Danas are well-positioned to facilitate

21   service upon Blue Eagle.

22             Finally, service on Blue Eagle through Messrs. Stroud and Danas is reasonably

23   calculated to apprise Blue Eagle of this action because counsel are aware of the procedural

24   posture of this action and the substantive issues related to Blue Eagle's status as a named party.

25   Counsel is familiar with the pleadings, *see, e.g.*, ECF Nos. 7, 9, 14, and the history of

26   communication with Rang Dong's counsel, *see* Tran Decl. ¶¶ 6–11.

27             Given this conclusion, the court need not reach the merits of Rang Dong's

28   argument that Hillebrand lacks standing to oppose the motion, *see* Reply to Mot. for Service at 2,

1  nor Hillebrand's argument that Rang Dong has unclean hands by virtue of having taken

2  contradictory positions regarding Hillebrand's agency status under the bill of lading, Opp'n to

3  Mot. for Service at 3–4.

4         3.    Conclusion

5         The court finds Rang Dong's proposed alternative method of service is not

6  prohibited by international agreement and is reasonably calculated to apprise Blue Eagle of this

7  action and afford Blue Eagle an opportunity to be heard.  Therefore, the court exercises its

8  discretion under Rule 4(f)(3) and orders service of process upon Blue Eagle through its U.S.-

9  based counsel, Andrew Stroud and Andrew Danas.

10  III.    CONCLUSION

11         For the foregoing reasons, plaintiff's motion to amend the complaint, ECF No. 30,

12  is GRANTED.  Plaintiff shall file its second amended complaint within fourteen (14) days of this

13  order.  In light of the court's granting plaintiff's motion to amend, defendant's motion to dismiss,

14  ECF No. 25, is DENIED as moot.

15         Plaintiff's motion for alternative service, ECF No. 26, is GRANTED.  Under

16  Federal Rule of Civil Procedure 4(f)(3), plaintiff may effectuate service on foreign defendant,

17  Blue Eagle Consolidation Services, through its U.S.-based counsel Andrew Stroud and Andrew

18  Danas.

19         IT IS SO ORDERED.

20  DATED:  July 7, 2020.

21

22  CHIEF UNITED STATES DISTRICT JUDGE

23

24

25

26

27

28