UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Rang Dong Joint Stock Company, | No. 2:18-cv-03195-KJM-KJN |
| Plaintiff, | ORDER |
| v. | |
| J.F. Hillebrand USA, Inc., et al., | |
| Defendants. | |

Plaintiff Rang Dong Joint Stock Company, doing business as Rang Dong Winery, sued defendants J.F. Hillebrand USA, Inc. and Blue Eagle Consolidation Services for damage to cargo carried by sea. Blue Eagle, citing a forum-selection clause, moves to dismiss. As explained below, the courts **grants** the motion.

**I.    BACKGROUND**

    **A.    The Defendants**

Defendants Blue Eagle and Hillebrand are both logistics companies that share a common parent company. *See* Higgins Decl. ¶¶ 2–4, Mot. Dismiss, ECF No. 50-3; Gilbertson Decl. ¶¶ 3–4, Mot. Dismiss, ECF No. 50-2. Blue Eagle is a German company; it does not have offices or employees in the United States. Higgins Decl. ¶ 5. But it is registered with the United States

Federal Maritime Commission (FMC) as a Non-Vessel-Operating Common Carrier (NVOCC).[1] *Id.* ¶ 6. In its capacity as a foreign-based NVOCC, Blue Eagle arranges and coordinates international transportation services. *Id.* ¶¶ 3–4. Blue Eagle and Hillebrand coordinate in providing these services. *Id.* ¶ 14.

### B. Factual Background

In early 2018, Rang Dong contracted with Blue Eagle and Hillebrand to ship three containers of Rang Dong's wine to Vietnam. *See generally* Bill of Lading, Second Am. Compl. (SAC) Ex. B, ECF No. 47-1. Although the parties disagree on numerous details regarding the contracting process and the contract itself, a few things are undisputed. On January 8, 2018, Mailynh Phan, Rang Dong's then-managing director responsible for arranging the shipment of its wine to Vietnam, emailed Joseph Higgins, Hillebrand's then-pricing coordinator. *See* Phan Decl. ¶¶ 2–3, Opp'n, ECF No. 55-1; Emails at 13–14, Higgins Decl. Ex. A, ECF No. 50-3. Ms. Phan requested "the export schedule from Oakland to Cat Lai Terminal in Ho Chi Minh City for the last week of January and the first week of February." Emails at 14. Mr. Higgins promptly responded with three vessels departing between January 22 and March 5. *Id.* at 11–12.

The following day, on January 9, 2018, after a few emails discussing pricing, Mr. Higgins sent Ms. Phan a Blue Eagle Negotiable Rate Arrangement (NRA) and requested that she "let us know how you'd like to proceed." *Id.* at 8; NRA # SUSS014887, Higgins Decl. Ex. B, ECF No. 50-3. Importantly, the NRA provides that "[t]o memorialize your acceptance of this NRA please confirm by e-mail referencing [the] NRA [number] . . . ." Higgins Decl. Ex. B. The NRA number was SUSS014887. *Id.* Ms. Phan emailed Mr. Higgins on January 16, 2018, specifically referencing NRA number SUSS014887 in the subject line. *See* Emails at 19. In that email, Ms. Phan "reserve[d]" three forty-foot containers on one of the vessels referenced in Mr. Higgins' January 8 email; the vessel was scheduled to depart on February 10, 2018. *Id.*

/////

---

[1] An NVOCC is defined as "a common carrier that does not operate the vessels by which the ocean transportation is provided," and "is a shipper in its relationship with an ocean common carrier." 46 U.S.C. § 40102 (17).

The NRA provides that "[a]cceptance of this NRA proposal will bind the parties to Blue Eagle Consolidation[] Services rules tariff, available on line [sic] at http://rates.descartes.com/pta/DxiServlet.WsServlet/login." Higgins Decl. Ex. B. The Blue Eagle rules tariff referenced in the NRA contains a forum-selection clause, which states in pertinent part that "[t]he German courts shall have exclusive jurisdiction to hear and determine any dispute arising from or in relation to these conditions and any contract or agreement subject thereto . . . ." Blue Eagle Tariff at 25–26, Gilbertson Decl. Ex. A, ECF No. 50-2.

Ultimately, Rang Dong did not ship its three forty-foot containers on the vessel departing on February 10, 2018; the containers shipped on a different vessel ten days later, but the rates were identical to those provided in the NRA. *See generally* Bill of Lading; Invoice, SAC Ex. A, ECF No. 47-1. Rang Dong alleges the wine was delivered to the wrong port and left in the sun for eight days, which caused "extensive[] damage." SAC ¶¶ 14–16. Specifically, Rang Dong alleges it suffered more than $500,000 in damages. *Id.* ¶ 20.

**C.    Procedural Background**

Rang Dong sued Hillebrand USA and Blue Eagle on December 12, 2018. *See generally* Compl., ECF No. 1. The operative complaint alleges damages under the Carriage of Goods by Sea Act, false bill of lading, and deviation claims against Hillebrand and Blue Eagle. *See generally* SAC. It alleges a negligence claim in the alternative against Hillebrand. *Id.* at 6. Before Rang Dong could serve Blue Eagle, on January 17, 2019, Hillebrand moved to dismiss Rang Dong's complaint under Rule 12(b)(6). *See* First Mot. Dismiss, ECF No. 9. The court granted in part and denied in part the motion. *See generally* Mot. Dismiss Order, ECF No. 23. In its order, the court declined to consider "at [that] stage of [the] proceedings" Hillebrand's arguments that Rang Dong was provided with and therefore bound by the forum-selection clause. *Id.* at 11.

Blue Eagle, now served, moves to dismiss. *See* Mot. Dismiss, ECF No. 50. The matter is fully briefed and the court submitted it without oral argument. Opp'n, ECF No. 55; Reply, ECF No. 58; Min. Order, ECF No. 56.

/////

## II. LEGAL STANDARD

Blue Eagle moves to dismiss this case on the ground that the forum-selection clause renders venue "improper" in the Eastern District of California. *See* Mot. Dismiss at 6, 10–11 (citing Fed. R. Civ. P. 12(b)(3)). A forum-selection clause cannot render venue "improper" under Rule 12(b)(3), however, because "[w]hether venue is . . . 'improper' depends exclusively on whether the court . . . satisfies the requirement of federal venue laws, and those provisions say nothing about a forum-selection clause." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 55 (2013). Blue Eagle does not allege that federal venue laws are not satisfied here. Thus, "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Gemini Techs., Inc. v. Smith & Wesson Corp.*, 931 F.3d 911, 913 (9th Cir. 2019) (quoting *Atl. Marine*, 571 U.S. at 60).

Because the object of Blue Eagle's motion is to enforce the parties' forum-selection clause, the court construes Blue Eagle's motion as a motion to dismiss for forum non conveniens, as it may do in these circumstances. *Cf. LeBlanc v. C.R. England, Inc.*, 961 F. Supp. 2d 819, 827 (N.D. Tex. 2013) ("[T]he moving party's choice of procedural mechanisms — Rule 12(b)(3) or § 1404(a) — does not dictate the court's choice of analytical tools.") (citing 5B Wright & Miller, Federal Practice & Procedure § 1352, p. 131 (3d ed. Supp. 2013)). The court has sufficient information to resolve the motion so construed.

## III. DISCUSSION

Rang Dong focuses exclusively on the applicability of the forum-selection clause, apparently conceding that dismissal is appropriate if it agreed to the forum-selection clause. *See Atl. Marine*, 571 U.S. at 63 ("[A] valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." (citation omitted)). Specifically, Rang Dong argues it never entered a contract containing a forum-selection clause because: (1) the bill of lading does not include the forum-selection clause; (2) it never agreed to the NRA; (3) the NRA did not comply with FMC regulations and cannot be considered an offer to contract; and (4) even if the forum-selection clause is valid and applicable, Blue Eagle failed to "reasonably communicate" it to Rang Dong. *See generally* Opp'n. Blue Eagle disagrees on all four counts. *See generally*

Reply. As the party invoking the forum-selection clause, Blue Eagle "bear[s] the burden of demonstrating the . . . inclusion of the forum selection clause in [the] contract." *Morgan Tire of Sac., Inc. v. Goodyear Tire & Rubber Co.*, 60 F. Supp. 3d 1109, 1113 (E.D. Cal. 2014) (citations omitted). The court reviews each of Rang Dong's arguments in turn.

### A.     Whether the Bill of Lading Includes the Forum-Selection Clause

Rang Dong argues the bill of lading is comprised exclusively of a two-page document that does not contain Blue Eagle's terms and conditions and does not advise Rang Dong of terms and conditions outside of the bill of lading. *See* Opp'n at 11–12. Rang Dong acknowledges the disclaimer appearing on the bottom of the first page advising that the bill of lading is "[s]ubject always to the exceptions, limitations, conditions and liberties, extract of which are set out on the reverse side hereof, to which the merchant agrees by accepting the [bill of lading]." *Id.* at 11. But Rang Dong argues the "exceptions, limitations, conditions and liberties" set out on the "reverse side" of the bill of lading refers to the following language: "THESE COMMODITIES, TECHNOLOGY, OR SOFTWARE WERE EXPORTED FROM THE UNITED STATES IN ACCORDANCE WITH THE EXPORT ADMINISTRATION REGULATIONS. DIVERSION CONTRARY TO U.S. LAW IS PROHIBITED." *Id.* Thus, because "[n]othing in the Bill of Lading advises [Rang Dong] that there are additional 'exceptions, limitations, conditions and liberties' outside of the language," Rang Dong argues the bill of lading does not include a forum-selection clause. *Id.* at 11–12.

Blue Eagle disagrees, first emphasizing Rang Dong's lack of evidence supporting its claim that the bill of lading did not include a forum-selection clause. *See, e.g.*, Reply at 6 ("[N]ot once has Rang Dong provided any evidence to support its claim that the second page of Exhibit B is the 'reverse' side of the front of the Blue Eagle bill of lading, as opposed to another document or even an additional portion of the front of the bill of lading."). However it is Blue Eagle's, not Rang Dong's, burden to demonstrate whether the bill of lading incorporates the forum-selection clause at issue here. *See Morgan Tire*, 60 F. Supp. 3d at 1113.

To meet that burden, Blue Eagle submits the declaration of Andrew Gilbertson. Mr. Gilbertson is Blue Eagle's designated FMC contact, and he was Hillebrand's Director of

Operations during the events at issue here. *See* Gilbertson Decl. ¶¶ 1, 13. In his capacity as Hillebrand's Director of Operations, Mr. Gilbertson was responsible for preparing, posting, and maintaining the tariffs required by the FMC. *See id.* ¶ 14. He notes that both U.S. law and FMC regulations require Blue Eagle to publish its terms and conditions in its rules tariff. *Id.* ¶ 25. Accordingly, Blue Eagle's bill of lading terms and conditions, which it adopted on February 15, 2011 and were in effect when Rang Dong's shipment was booked and transported, are "published as Rule 8 of the Blue Eagle Rules tariff." *Id.* ¶ 26. Mr. Gilbertson "personally prepared and arranged for the posting of these terms in the Blue Eagle tariff." *Id.* Importantly, "[t]he Blue Eagle bill of lading terms and conditions published in Rule 8 of the Blue Eagle Rules Tariff are the same terms and conditions that are published on the reverse side of the Blue Eagle bill of lading." *Id.* ¶ 27.

Although Mr. Gilbertson stops short of saying the Blue Eagle terms and conditions are published on the reverse side of the bill of lading Blue Eagle provided to Rang Dong, his statement accords with the court's understanding of conventions surrounding bills of lading. *See* Kishor Bhatt, *Bills of Lading: Purpose; Utility; Legality Explained* (2021) (describing difference between short-form bill of lading, which "does not bear the terms and conditions of carriage on the reverse" side, and long-form bills of lading, where "the terms and conditions of carriage are printed on the reverse (back) of the bill of lading"); *id.* (noting long-form bills of lading are "commonly used in international shipping"); *Estes Express Lines v. Whatman Hardwoods*, No. 19-cv-278, 2019 WL 2273847, at *2 n.2 (E.D. Va. May 28, 2019) ("Bills of lading generally fall into two categories: long-form bills of lading that expressly contain all the terms of the transportation contract and short-form bills of lading that do not expressly contain all the terms of the transportation contract but incorporate them by reference to another document." (citing Black's Law Dictionary (10th ed. 2014)). Rang Dong's position that the two short, all-capitalized sentences representing that shipped goods are exported according to U.S. export laws comprise the "exceptions, limitations, conditions and liberties" applicable here cannot be squared with the court's understanding of bills of lading. That said, although Blue Eagle offers the more plausible /////

explanation, an evidentiary hearing would be necessary to resolve this issue in full and therefore the court declines to decide the matter on these grounds here.

### B. Whether Rang Dong Agreed to the NRA

Rang Dong argues it never agreed to the NRA Mr. Higgins sent Ms. Phan on January 9, 2018. *See* Opp'n at 12–15. The court disagrees. After discussing pricing with Ms. Phan, Mr. Higgins sent Ms. Phan NRA number SUSS014887 and requested that she "let us know how you'd like to proceed." Emails at 8; Higgins Decl. Ex. B. The NRA stated:

> **Important Information regarding this NRA**
>
> This document constitutes a NVO Rate Agreement (NRA) between the NRA shipper and Blue Eagle Consolidation Services, pursuant to 46 CFR 532.
>
> . . .
>
> Acceptance of this NRA proposal will bind the parties to Blue Eagle Consolidations Services rules tariff, available on line [sic] at http://rates.descartes.com/pta/DxiServlet.WsServlet/login[.]
>
> **Important steps to activate this NRA**
>
> *To memorialize your acceptance of this NRA, please confirm by e-mail referencing NRA #*, or return a signed copy of this document, to your JF Hillebrand contract.

Higgins Decl. Ex. B (emphasis added). Seven days later, on January 16, 2018, Ms. Phan emailed Mr. Higgins, specifically referencing NRA number "SUSS014887." Emails at 19. In the email, Ms. Phan "reserve[d]" three forty-foot containers on the "MOL Contribution," one of the vessels referenced in Mr. Higgins' January 8 email. *Id.* Put simply, the NRA directed Rang Dong to "referenc[e]" the NRA number in an email if it wanted to accept the NRA. *See* Higgins Decl. Ex. B. Ms. Phan, on behalf of Rang Dong, did exactly that, which "b[ou]nd the parties to Blue Eagle['s] rules tariff," including the forum-selection clause.

Rang Dong's arguments to the contrary are unpersuasive. Rang Dong first argues that the "major problem" with Blue Eagle's argument is that Blue Eagle did not comply with federal regulations for NRAs for NVOCCs like Blue Eagle. *See* Opp'n at 12–15 (citing 46 C.F.R.

§ 532.5(c) (2018) (listing three ways a shipper can agree to NRA)).  But, as Blue Eagle points out, Rang Dong's argument is based on FMC regulations adopted more than six months after the shipment in this case.  *See* Reply at 10–11 (citing 46 C.F.R. § 532.5 (2018)).  Blue Eagle's NRA complied with FMC regulations in effect in February 2018.  *See* Reply at 10–12 (citing 46 C.F.R. § 532.5 (2012)).  And in any event, the NRA also complies with the updated FMC regulations that Rang Dong cites.  *See* 46 C.F.R. § 532.5(c)(2) (2018) (noting a shipper agrees to the NRA if it sends the NVOCC an email indicating acceptance of the NRA terms).

Rang Dong next argues it did not agree to the NRA because Ms. Phan only "reserved," but did not "book," a shipment.  *See* Opp'n at 14.  In support, Rang Dong offers Ms. Phan's declaration.  She states:

> In my January 16, 2018 email to Mr. Higgins, it was not my intent to enter into any contract or book any shipment with J.F. Hillenbrand [sic]. I could not have entered into any agreement as Rang Dong Winery's wine had not yet been bottled at that point. Thus, as of January 16, 2018, I did not know whether there would even be a shipment at that time or what the size of the shipment would be. My only purpose in sending the January 16, 2018 email was to reserve a spot on the MOL Contribution in case the wine was completed in time.

Phan Decl. ¶ 5.  The court is not persuaded.  In Ms. Phan's January 16 email to Mr. Higgins, Ms. Phan "reserve[s]" three forty-foot containers and then notes that Rang Dong was waiting for "a" wine to "stabilize to bottle for the export."  Emails at 19.  She then says if that wine did not stabilize in time, she would have to reduce the shipment from three forty-foot containers to two forty-foot containers and one twenty-foot container.  *Id.*  In other words, Ms. Phan knew Rang Dong would send most of its wine; the only uncertainty concerned whether one-sixth of the wine would be ready in time.  If it was not ready, then the "shipment would be reduced" to two forty-foot containers and one twenty-foot container.  *Id.*  Ms. Phan's January 16 email contradicts her claim that her "only purpose" in sending the email was to reserve a spot on the vessel "in case the wine was completed in time."  *Id.*; *see also* Opp'n at 14 ("It actually made no sense for [Rang Dong] to 'book' a shipment . . . [because Rang Dong] was still in the process of bottling its wine as of January 16, 2018.").

      Rang Dong's final argument is that, because it ultimately shipped its wine on a different vessel ten days after its originally scheduled shipment, "the shipment . . . at issue in this lawsuit is a different shipment than the shipment discussed under the NRA." Opp'n at 14. Again, the court is not persuaded by this argument. The NRA does not contain the specific vessel name or date on which Rang Dong would ship its goods. Nor could it: Blue Eagle sent the NRA to Rang Dong before it committed to a date or vessel. The NRA does, however, identify Rang Dong as shipping wine in forty-foot containers, *see* Higgins Decl. Ex. B, which is exactly what Rang Dong did, *see* Bill of Lading. More importantly, the NRA provides ten rate quotes for the shipment of Rang Dong's wine, which are the same rates set forth in Rang Dong's February 20 invoice. *Compare* Higgins Decl. Ex. B at 17, *with* Invoice at 2. Finally, the NRA provides a "time range": March 31, 2018. Higgins Decl. Ex. B. Rang Dong's cargo reached its destination before that date. *See* SAC ¶ 15. The court finds Rang Dong agreed to the NRA.

      **C.**    **Whether the NRA Complied With FMC Regulations and Can be Considered an Offer to Contract**

      Rang Dong argues the NRA was illegal for two additional reasons. First, Rang Dong argues Blue Eagle did not comply with 46 C.F.R § 532.4, which provides "[b]efore entering into NRAs under this Part, an NVOCC must provide electronic access to its rules tariffs to the public free of charge." Opp'n at 15. Rang Dong claims that the third party through whom Blue Eagle provides its rules tariff, Descartes, requires users to pay a fee to access the website. *Id.*; Tran Decl. ¶ 2, Opp'n, ECF No. 55-3 (stating and attaching exhibit claiming the Descartes website requires users to pay a fee). This is inaccurate. The rates registration page on the Descartes website provides various registration options to recover tariffs for NVOCCs. *See* Descartes Registration Form, Danas Decl. Ex. B, ECF No. 58-1. The fourth option is "$0 per month, as required by Part 531.4 and 532.4 of the CFR. (Access to licensed NVOCC governing rules that utilize NRA and/or NSAs.)." *Id.*; *see also* Danas Decl. ¶ 4. Blue Eagle, through Descartes, provided free electronic access to its rules tariffs in January 2018. *See* Gilbertson Decl. ¶¶ 17–19.

      Second, Rang Dong argues the NRA is not an offer to contract because it does not contain all material terms. *See* Opp'n at 16–17. Here, Rang Dong primarily argues that the NRA's listed

9

final destination—Ho Chi Minh, VT, rather than Cat Lai Terminal—is "inaccurate." *Id.* But this argument assumes Rang Dong's desired conclusion: Rang Dong argues the parties agreed to deliver its cargo to Cat Lai Terminal specifically, whereas Blue Eagle maintains it agreed to deliver the cargo to Ho Chi Minh generally. *See id.* at 16 ("[O]ne of the essential issues in this case is whether Defendants shipped the cargo to the correct destination."). Blue Eagle's NRA complied with FMC regulations, and it was an offer to contract. Rang Dong is bound by the terms and conditions referenced in the NRA.

### D. Whether Blue Eagle Failed to "Reasonably Communicate" the Forum-Selection Clause to Rang Dong

Rang Dong's final argument is that even if the court finds the bill of lading incorporates the NRA or that the NRA is a valid agreement, the court should deny Blue Eagle's motion because it did not "reasonably communicate" the forum-selection clause to Rang Dong. *See id.* at 17–23. The "reasonably communicated" standard Rang Dong invokes here is the Ninth Circuit's two-pronged test for determining whether a passenger of a common carrier is contractually bound by the fine print of the passenger ticket. *See Deiro v. Am. Airlines, Inc.*, 816 F.2d 1360, 1363 (9th Cir. 1987). The court declines to apply this test. Rang Dong's argument depends in part on the court's accepting its previous arguments and relying on Blue Eagle's argument in the alternative, which the court does not reach. *See, e.g.*, Opp'n at 18 ("Instead of informing [Rang Dong] of the existence of a forum-selection clause, Blue Eagle contends that as long as it published a forum-selection clause somewhere on the internet as required by laws regulating NVOCCs, [Rang Dong] should have been aware of it."). In any event, the court is not persuaded by Rang Dong's arguments. *See, e.g.*, *id.* at 20 (arguing "the provisions incorporated were in a very lengthy document" and that Rang Dong "would have to scroll through numerous pages before finding the forum-selection clause"); *id.* at 21 ("Significantly, given that Defendants provided the NRA more than a month prior to issuance of the Bill of Lading, Defendants should have reminded [Rang Dong] of the NRA."); *id.* at 22 (arguing Mr. Higgins should have confirmed that Ms. Phan could access the Descartes website and ask her if she had any questions about the website or the NRA); *id.* at 23 (describing process as "confusing" because the link provided in the NRA, described

explicitly as a link to Blue Eagle's rules tariff, "does not take the consumer directly to the forum-selection clause"). Rang Dong is a sophisticated commercial shipper of goods engaged in international trade, not a mere passenger on a boat. *Deiro*'s "reasonably communicated" test is not relevant here.

## IV.     CONCLUSION

The court **grants** Blue Eagle's motion to dismiss. Rang Dong and Hillebrand are directed to meet and confer regarding whether Rang Dong can continue its case against Hillebrand in this court; based on this meet and confer they shall file a joint status report within twenty-one days setting forth their positions on this issue and proposing a schedule for any briefing they believe is necessary.

This order resolves ECF No. 50.

IT IS SO ORDERED.

DATED: May 18, 2022.

_____
CHIEF UNITED STATES DISTRICT JUDGE